# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JAMES DOGHRAMJI, SHEREE COOK, and RACHEL BRYANT, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY HEALTH SYSTEMS, INC., *et al.*, <br><br> Defendants. | No. 3:11 C 442 <br> Hon. Marvin E. Aspen |
| UNITED STATES OF AMERICA and STATE OF TEXAS *ex rel.* AMY COOK-RESKA, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY HEALTH SYSTEMS, INC., *et al.*, <br><br> Defendants. | No. 3:14 C 2160 <br> Hon. Marvin E. Aspen |
| UNITED STATES OF AMERICA *ex rel.* NANCY REUILLE, <br><br> Plaintiffs, <br><br> v. <br><br> COMMUNITY HEALTH SYSTEMS PROFESSIONAL SERVICES CORP., *et al.*, <br><br> Defendants. | No. 3:15 C 110 <br> Hon. Marvin E. Aspen |

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ) | |
| KATHLEEN A. BRYANT, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 3:14 C 2195 |
| v. ) | Hon. Marvin E. Aspen |
| ) | |
| COMMUNITY HEALTH SYSTEMS, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

MARVIN E. ASPEN, District Judge:

Relators in the above-captioned cases (collectively "Relators") seek reasonable attorneys' fees from defendants, Community Health Systems, Inc. and many of its subsidiaries (collectively "CHS"), following the parties' execution of a settlement agreement that resolved this False Claims Act lawsuit. 31 U.S.C. § 3729 *et seq*. We previously ruled that CHS's interpretation of the settlement agreement prevails such that the agreement does not preclude CHS from challenging Relators' entitlement to attorneys' fees. We now consider whether any of the Relators are entitled to attorneys' fees. For the following reasons, we hold that all remaining Relators claims for attorneys' fees are barred.

**ANALYSIS**

Relators claim they are entitled to reasonable attorneys' fees under the False Claims Act (FCA) because the Government settled their claims for a significant recovery. Defendants argue Relators' fee claims are barred under the terms of § 3730(d), the first-to-file bar, and the public disclosure bar. We review each of these arguments in turn.

## I. Statutory Requirements of 31 U.S.C. § 3730(d)

Relators believe that they are entitled to reasonable attorneys' fees under the False Claims Act because the Government intervened and settled their claims causing each relator to receive a portion of the the settlement. Defendants argue the sharing agreement between the parties prevents the Relators from qualifying for attorneys' fees.

The False Claims Act only entitles relators to attorneys' fees under certain circumstances laid out in 31 U.S.C. § 3730(d):

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. . . . Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3730(d)(1). Actions brought under subsection (b) are actions by private persons brought on behalf of the Government, rather than actions brought by the Attorney General. 31 U.S.C. § 3730(b).

The parties' arguments fall into two categories: (1) whether the Government proceeded with each Relator's case and (2) whether each Relator must receive a direct payment from the Government to receive attorneys' fees.

### A. The Government "proceeded with" each case

The False Claims Act does not define the phrase "[i]f the Government proceeds with an action" directly, but for the purposes of this dispute the meaning is facially unambiguous. The Government proceeds with an action when it intervenes in the action. *See, e.g.*, 31 U.S.C. § 3730(b)(2) ("The Government may elect to intervene and proceed with the action. . . ."); *id.* (b)(4)(2) ("[P]roceed with the action, in which case the action shall be conducted by the

Government . . ."). The Government intervened in and settled all four of the consolidated cases. Thus, the Government "proceeded with" each case consolidated before us.

B. **Each Relator was paid a share of the fee**

Section 3730(d) contains two "shall" statements that form the backbone of the parties' dispute: (1) "If the Government proceeds with an action brought by a person under subsection (b), such person shall . . . receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement . . . "; (2) "Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(1). Defendants argue the phrase "any such person" could refer to either "a person under subsection b," meaning it could also incorporate the requirement that a *qui tam* plaintiff receive the relator's statutory share of any recovery in order for its fees to be assessed against the defendant.

Several statutory clues indicate that there is no requirement that a relator receive the statutory share in order to receive her attorney's fees. First, the phrase "such person" appears in both designations of eligibility for the relator's share and attorney's fees. *See U.S. ex rel. Taxpayers Against Fraud v. General Elec. Co.*, 41 F.3d 1032, 1045 (6th Cir. 1994). In the relator's share phrase, "such person" is modified by a reference to § 3730(b), "[a]ctions by private persons." 31 U.S.C. § 3730(b). Thus, the repetition of "such person" conveys the same requirement for attorney's fees as for the relator's share: the requesting party must qualify as a private person who can bring a *qui tam* claim under § 3730(b). *See Taxpayers Against Fraud*, 41 F.3d at 1045 (describing the parallel structure of the two sections). Second, there is a single enumerated condition that spells out the requirements for relator's recovery of both her share and her fees: "If the Government proceeds with an action. . . ." No other conditional phrasing

4

appears in this section. In other words, when Congress wanted to create a condition, it knew how to do it. There is no reason to believe Congress implicitly required receipt of the relator's share in order to receive a recovery for attorney's fees. Finally, the fact that relators contracted to reduce their share of the recovery below the statutory threshold to encourage settlement does not vitiate their interest in recovering their costs. *See Taxpayers Against Fraud*, 41 F.3d at 1047. Holding otherwise would discourage settlement and frustrate the goal of reducing protracted litigation implicit in the assignment of attorney's fees and costs to FCA defendants.

**II.     First-to-File Bar**

The FCA's first-to-file rule provides that "[w]hen a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).[1] By its own terms, this statutory provision "unambiguously establishes a first-to-file bar, preventing successive plaintiffs from bringing related actions based on the same underlying facts." *U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 515 (6th Cir. 2009) (quoting *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 971 (6th Cir. 2005)). "In order to determine whether a relator's complaint runs afoul of the § 3730(b)(5)'s first-to-file bar, a court must compare the relator's complaint with the allegedly first-filed complaint." *Id.* at 516. The key question is whether both complaints allege "all the essential facts" of the underlying fraud; if they do, then the first complaint precludes the later complaint, even if the later-in-time complaint incorporates different details. *Id. Poteet*

---

[1] Despite Relators' claims to the contrary, there is no fair reading that the text "by a person under subsection (b)" excludes the first-to-file limitation in subsection (b)(5). 31 U.S.C. § 3730(b). Although it is true that both subsections (b) and (d) include separate qualifications, this is because subsection (b) describes who has standing to act as a relatorwhile subsection (d) describes who may financially benefit from relating fraud. In other words, a person convicted of perpetrating the fraud she relates could serve as a relator, but not receive the relator's share under our reading of §3730(d) and (b).

5

demonstrates that identifying additional defendants standing alone does not remove the first-to-file bar, at least where the complaints both identify the "same general fraudulent scheme." *Id.* at 517. In other words, even if the second complaint gives additional information that suggests a broader scope of fraud than the initial complaint, "once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds, and the rationale behind allowing private plaintiffs to bring qui tam suits is fulfilled." *Id.* (quotation omitted).

None of Relators' complaints allege fraud beyond the initial widespread fraud allegations contained in Dr. Plantz's complaint, with the apparent exception of the Laredo-specific allegations in the Cook-Reska complaint. Dr. Plantz's complaint alleges widespread Emergency Department fraud, including significant specific detail. While it is true that a hospital-specific claim like the Laredo claim does not bar a later-in-time allegation of a nationwide fraud scheme, Dr. Plantz's complaint details a nationwide fraudulent scheme. *See U.S. ex rel. Hutcheson v. Blackstone Medical, Inc.*, 694 F. Supp. 2d 48, 59 (D. Mass. 2010).[2] As a result, the difference in scope between the various complaints and the Plantz complaint cannot remove the first-to-file bar as to any of the remaining Relators. We analyze each consolidated relator separately below.

"[I]n order to preclude later-filed qui tam actions, the allegedly first-filed qui tam complaint must not itself be jurisdictionally or otherwise barred." *Poteet*, 552 F.3d at 516. For example, if the first complaint is "legally incapable of serving as a complaint" under Federal Rule of Civil Procedure 9(b), then the first complaint does not bar subsequent relators from filing. *Id.* Rule 9(b)'s requirement that fraud be pleaded with particularity applies to complaints

---

[2] Relators point to this out-of-circuit district court case as support for their argument. This is neither binding authority, nor factually similar to our case. The relator in *Blackstone* occupied a similar position to Dr. Plantz, in that he was not the first to file *any* complaint, but he was the first to file a nationwide complaint. Thus, at best *Blackstone* supports Defendants' reading of the first-to-file rule.

alleging violations of the False Claims Act, because "defendants accused of defrauding the federal government have the same protections as defendants sued for fraud in other contexts." *United States v. Brookdale Senior Living Communities, Inc.*, 892 F.3d 822, 830 (6th Cir. 2018).

### A. Doghramji, Cook, and Bryant

The *Doghramji* group of relators claim their complaint contains factual allegations that do not appear in Plantz's complaint. They claim they alleged "new, material facts" including a "company-wide scheme affecting CHS hospitals across the country." (Doghramji Supp. Mem. (Dkt. No. 306) at 4.) This precise allegation appears in Plantz's complaint. (Plantz Compl. ¶¶ 193, 195, 211, 214.) The *Doghramji* relators also claim to have the only complaint focused on a nationwide scheme that would survive Rule 9(b)'s heightened pleading standard, because only their complaint "contained particularized allegations that CHS used ProMed, the Blue Book, financial incentives, and the threat of termination (and or [sic] incentives) to encourage physicians to increase Emergency Room admissions. . . ." (Doghramji Supp. Mem. at 4.) These allegations are included in significant detail in the Plantz complaint. (Plantz Compl. ¶¶ 227–233, 239–243, 246–249, 262–266.) Plantz's complaint was filed prior to the *Doghramji* relators, and includes all of the purportedly unique contributions of these relators. As a result, the *Doghramji* relators are not entitled to attorneys' fees, because their claim for fees is barred under the first-to-file rule.

### B. Amy Cook-Reska

Plaintiff Cook-Reska alone among the remaining relators should recover reasonable attorneys' fees for her initial contribution. Cook-Reska *did* receive fees and a relator's share for the claims she raised at the Laredo facility. (Cook-Reska Supp. Briefing (Dkt. No. 314) at 3.) Her argument that the lack of official designation between the Laredo and national components

7

of the settlement entitles her to recover attorneys' fees for *all* claims against Defendants (*Id.* at 4–5) has neither legal nor factual support.

First, the structure of the Settlement Agreement's payout of the relator's share predominately to Dr. Plantz, with a specific amount reserved for Cook-Reska, supports Defendant's split between national emergency department claims and Laredo claims. (Def. Supp. Opp. Brief (Dkt. No. 316) at 2; Dkt. No. 115–15; Dkt. No. 115–16.) This split tracks the intuitive difference between a fraud claim involving a single medical provider and a company-wide scheme of fraud reflected. Nothing in Cook-Reska's complaint alleges a broader pattern of fraud beyond Laredo.

Given the facts do not favor Cook-Reska's complaint, she argues that reporting a single instance of fraud involved in a broader web of fraudulent activity bars all other relators from recovery. (Cook-Reska Supp. Briefing (Dkt. No. 314) at 5.) She is wrong. Her complaint would need to be able to independently survive a Rule 9(b) motion as to all 117 other facilities to qualify her complaint as the first-to-file on all ED claims. *See Walburn*, 431 F.3d at 973. Her complaint would only survive as to Laredo, so she only bars recovery for the next-to-file as to the Laredo facility. Since Cook-Reska already recovered fees and costs associated with that claim, she is entitled to no further relief.

### C. Kathleen Bryant

Bryant claims she is entitled to attorneys' fees because her complaint alleged significant specific information about fraud at Heritage Medical Center. (Bryant Supp. Mem. at 5.) Dr. Plantz named Heritage Medical Center as one location implicated in the nationwide scheme of fraud in his complaint. (Plantz Compl. ¶ 171.) Although Bryant might be able to recover as an insider if the Government had specifically recovered for her allegations about Heritage Medical

8

Center, as they did for Cook-Reska's Laredo allegations, Byrant's allegations were encompassed within the broad national Emergency Department settlement. As such, she did not provide any unique information in her complaint beyond the extant scheme alleged in Plantz's complaint, other than reiterating that a named defendant in the initial complaint had, in fact, done as specified.

Bryant's citation to *Walburn* are inapposite, because her situation is far afield from the Walburn relator's. *Walburn*, 431 F.3d at 973. In *Walburn* the relator recovered despite an earlier complaint laying out a very general allegation of fraud, because the initial complaint standing alone "fail[ed] to provide adequate notice to a defendant of the fraud it allege[d]." *Id.* The Court pointed to Rule 9(b) as the guidepost for insufficient notice to a defendant, along with the FCA's goal of bringing fraud to the government's attention. *Id.* Plantz's complaint not only theoretically, but actually did, satisfy both of these goals. The Government began coordinating the national investigation after Plantz filed his complaint. Dr. Plantz's complaint also alleges the specifics of the scheme of fraud, including senior executives' knowledge of the scheme. (Plantz Compl. ¶¶ 262–269.) Byant identifies no particular component of the fraudulent scheme outside the ambit of Plantz's complaint, instead resting on the specificity of her knowledge of Heritage Medical Center. This is not enough. Byrant's request for attorneys' fees is barred by the first-to-file rule.

### D. Nancy Reuille

Reuille, like Cook-Reska, filed her complaint before Dr. Plantz, but did not allege the scheme that was ultimately the source of the settlement in these cases. Reuille filed her complaint in 2009, while Plantz filed his complaint in 2010. (Reuille Supp. Briefing (Dkt. No. 315) at 2.) Unlike Plantz, Reuille only alleged fraud at a single hospital. (*Id.* at 2–3.) She also did

9

not specifically identify the pattern of fraud as emanating from the Emergency Department, which was ultimately a key component of the settlement. (*Id.* at 3.) In fact, the pattern of payments for the claims supports Defendants' arguments that the government and Defendants identified two categories of claim: the Laredo claims and the Emergency Department claims. It would be difficult to argue Reuille was the first to file the ED complaint, rather than Plantz, given that no allegations regarding an Emergency Department specifically emerged until Plantz's complaint. (*See id.* at 3.) Instead, Reuille argues she identified issues in *her area's* caseload. (*Id.*) In other words, Reuille seeks to recover attorneys' fees for a settlement impacting 118 other hospitals because her complaint mentioned fraud at a single hospital first. Allowing Reuille to recover for fraud she was not the first to report in any material sense as to the national emergency department claims would fly in the face of the design of the False Claims Act's attorneys fee bar.

### III. Public Disclosure Bar

"Generally, unless the relator was an 'original source' within the meaning of the statute, the FCA bars a claim based on publicly disclosed information." *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 918 (6th Cir. 2017). "[P]ublic disclosure occurs 'when enough information exists in the public domain to expose the fraudulent transaction.'" *Id.* (quoting *U.S. ex rel. Antoon v. Cleveland Clinic Found.*, 788 F.3d 605, 614–15 (6th Cir. 2015)). "To decide whether a claim has been publicly disclosed, courts look at the essential elements of alleged fraud to determine if enough information exists in the public domain to expose the fraudulent transaction." *Id.* "Thus, the public disclosure bar is not implicated—even if one or more of a claim's essential elements are in the public domain—unless the exposed elements, taken together, provide adequate notice that there has been a fraudulent transaction." *Id.* at 918–19.

The *Doghramji* complaint cannot survive the public disclosure bar, because it restates information in the public eye at the time the complaint was filed. The *Doghramji* relators point to their unique statistical analysis as a rationale for their entitlement to attorneys' fees. They were not themselves the source of any information contained in the statistical analysis. While the statistical evidence may have proven helpful, it is akin to expert testimony on extant information. As such, treating it as "new information" for the purpose of excepting these relators' complaint from the first-to-file bar would allow parasitic suits brought by any number of statistical experts after a widespread fraud is disclosed. In other words, the elements of the unique statistical analysis were already in the public domain at the time the *Doghramji* relators filed their complaint. It is thus barred under the public disclosure rule.

## CONCLUSION

Relators' claims for attorneys' fees are barred by 31 U.S.C. § 3730(b)(5), since none of the remaining Relators was first-to-file within the meaning of the False Claims Act on the relevant claims. The Doghramji relators' claims are also barred by 31 U.S.C. § 3730(e)(4), because the allegations contained with the complaint were already publicly disclosed at the time the Doghramji complaint was filed. Therefore, Relators' claims for attorneys' fees are denied and this matter is terminated.

_____
Marvin E. Aspen
United States District Judge

Dated: April 1, 2020
       Chicago, Illinois